SHIVERS, Judge.
This appeal is from a final order of the Department of Health and Rehabilitative Services (HRS) rejecting the recommendations of the hearing officer and denying G. & J. Investment Corporation, Inc.’s (G & J’s) petition for retroactive Medicaid payments. We affirm the final order and find that one issue merits discussion. The issue is whether HRS properly determined that its rules prohibit retroactive payments of Medicaid reimbursements to an out-of-business nursing home.
G & J is the assignee of the rights of two bankrupt nursing homes. The assignor is B & K Investments, Inc. (B & K). B & K began managing the two nursing homes in 1977. HRS and B & K entered into a written ‘provider’ agreement for the operation of nursing homes. The written agreement between HRS and B & K provided, “In instances of non-payment or underpayment conditions due to error(s) not attribut *460 able to provider who has furnished nursing home services and care to persons properly-certified and eligible, [HRS] shall make payment to the provider upon receipt of properly completed claims documents.”
In August 1979 B & K filed for bankruptcy under Chapter 7. The bankrupt estate abandoned its interest in the two nursing homes, and its only remaining asset was a claim for money due and owing from HRS for underpayment of Medicaid reimbursements. HRS required that cost reports be submitted in order to claim the Medicaid reimbursements.
The cost reports remained incomplete three years after the filing of the bankruptcy. In September 1982 G & J purchased the bankrupt estate’s interest in the Medicaid reimbursements.
In February 1983 G & J filed five cost reports with HRS for the period from May 5, 1977, through August 31, 1979. HRS refused to accept the reports. One of the grounds for the refusal was that retroactive payments cannot be made. The 1977 version of Florida Administrative Code Rule 10C-7.48(7)(i) states, “Retroactive payment shall not be made to nursing homes whose costs exceeds (sic) annual payment, an allowance of nine (9%) percent is provided in lieu of this.”
In 1984 G & J initiated an administrative hearing to determine whether HRS is required to accept the cost reports. The hearing officer found that the written agreement between B & K and HRS specifically provided for retroactive reimbursements. HRS rejected the hearing officer’s conclusions of law, but it accepted the cost reports on the basis that it had previously granted extensions of time for filing the reports.
The ensuing litigation culminated in a recommended order filed by another hearing officer in July 1991. The hearing officer concluded that HRS should be required to make a lump sum payment of $447,-473.34 in disallowed, unreimbursed Medicaid expenses.
HRS rejected the recommendation and entered a final order ruling that it owes G & J nothing. HRS reasoned that pursuant to Rule 10C-7.48(7)(i), the only way to recoup an underpayment was through an allowance added to payments in subsequent months, and thus an out-of-business nursing home cannot recover an underpayment. We find that HRS’s interpretation of Rule IOC-7.48 and the statutes implemented by the rule is reasonable. “The rule is clear that an agency’s interpretation of a statute, with which it is legislatively charged with administering, shall be accorded great weight and should not be overturned ‘unless clearly erroneous.’ ” Cargill, Inc. v. Hill, 503 So.2d 1340, 1342 (Fla. 1st DCA 1987) (quoting Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815, 820 (Fla.1983)).
The specific statutory authority for Rule IOC-7.48 is section 409.026(1) and (6), Florida Statutes (1977) (HRS “shall conduct, supervise, and administer all family services work within the state_”). Section 409.055 states, “[HRS] is a body corporate and shall adopt and have a corporate seal. It shall have the power to contract and be contracted with, to sue and be sued in action in ex contractu but not in torts, and to have and to possess corporate powers for all purposes necessary to administer this chapter.” Rule IOC-7.48 interprets or implements section 409.266, Florida Statutes (1977). Subsection 409.266(2)(b) states, “[HRS] is hereby authorized to [c]ontract with health maintenance organizations ... for the provision of medical services to eligible persons.”
Rule 10C-7.48(5) states, “Requirement for participation in the Medicaid nursing home care program effective January 1, 1978, are as follows ... (b) Execution of a provider agreement ... attached hereto as Appendix II and made a part hereof by reference.” Therefore, the provider agreement is not a document isolated from the rule prohibiting retroactive payments; it is a part of the rule itself.
Rule 10C-7.48(7)(i) and the agreement provision can be harmonized. The agreement allows retroactive payments to Providers in instances of nonpayment or underpayment “due to errors” not attributable to the Provider. The language preced *461 ing this provision in the provider agreement indicates that an ‘error’ does not include a situation merely where ‘costs exceed annual payments’:
The payment of any monies on behalf of a Medicaid recipient for a specified period of service which results in an amount received by the Provider in excess of that amount to which the Provider is entitled, shall be reported and refunded to [HRS]. In those instances where an overpayment circumstance is due to recipient error, there shall be no repayment demand imposed upon the Provider. In those instances of overpayment due to [HRS] errors in eligibility investigation and determination, there likewise shall be no imposition of responsibility upon the Provider. Overpayment attributable to manual or mechanical miscalculation or miscue resulting in a payment amount to which the Provider is not entitled, shall be refunded when identified and requested.
(emphasis added). The agreement continues on to provide for “instances of nonpayment or under-payment conditions due to error(s) not attributable to Provider....” This provision, taken in context with the entire agreement, appears to have little to do with retroactive payments claimed as a result of reimbursements intentionally disallowed by HRS — the sort of payments squarely addressed by Rule 10C-7.48(7)(i).
Therefore, Rule 10C-7.48(7)(i) is not in conflict with the provider agreement, and it is not clearly erroneous to interpret the rule as prohibiting retroactive payments to an out-of-business nursing home. Accordingly, we affirm.
AFFIRMED.
ZEHMER and KAHN, JJ., concur.